

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-10-00209-CR

JESSE RAY DUKE, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the Fifth Judicial District Court
Cass County, Texas
Trial Court No. 2008F00311

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss
Concurring Opinion by Justice Carter

OPINION

This classic she-said-he-said case—alleging that Jesse Ray Duke committed indecency with a child, S.S., by sexual contact—is complicated by a multi-year child-custody dispute between S.S.'s parents and varying statements and recantations by S.S. concerning the charged offense. From a guilty verdict and a sentence of sixty years' imprisonment, and after a post-judgment recantation by S.S. and a denial of Duke's motion for new trial, Duke appeals on various grounds. We affirm the judgment of the trial court because (1) no error was preserved regarding limiting cross-examination and affidavits of S.S., (2) a no-adverse-inference instruction was not required, (3) no mistrial was required, (4) no new trial was required, and (5) sufficient evidence supports Duke's conviction.

*(1)     No Error Was Preserved Regarding Limiting Cross-Examination and Affidavits of S.S.*

During trial, the trial court limited the scope of cross-examination of S.S. and refused to admit into evidence two affidavits signed by her in SAPCR proceedings.[1] Duke argues the cross-examination and affidavits were admissible under Rule 613 of the Texas Rules of Evidence, which is an exception to Rule 608 of those rules.

Rule 608(b) forbids inquiry into specific instances of a witness' conduct for the purpose of attacking or impeaching a witness' credibility. TEX. R. EVID. 608(b). Rule 613, though, provides that a witness may be impeached by "proof of circumstances or statements showing bias

---

[1]In one of the affidavits, S.S. briefly describes the abuse and requests her father be given the right to determine her residence. In the other affidavit, which is dated after the first, S.S. requests her mother be given the right to determine her residence.

2

or interest . . . ." TEX. R. EVID. 613(b). The Texas Court of Criminal Appeals has held that evidence of manipulation "should be analyzed under the same rules that govern evidence of truthful or untruthful character."[2] *Schutz v. State*, 957 S.W.2d 52, 69 (Tex. Crim. App. 1997) (social worker's testimony that the child did not exhibit the traits of manipulation admissible under Rule 608 of the Texas Rules of Evidence). The Texas Court of Criminal Appeals, however, has recognized Rule 613 is an exception to Rule 608 and permits the use of "extrinsic evidence to show bias or interest." *Billodeau v. State*, 277 S.W.3d 34, 40 (Tex. Crim. App. 2009) (holding child's threat to accuse different person of molestation should have been admitted in defendant's trial). The court stated, "The possible animus, motive, or ill will of a prosecution witness who testifies against the defendant is never a collateral or irrelevant inquiry, and the defendant is entitled, subject to reasonable restrictions, to show any relevant fact that might tend to establish ill feeling, bias, motive, interest, or animus on the part of any witness testifying against him." *Id*. at 42–43.

The State argues Duke failed to preserve any Rule 613 objection. The State argues, "[D]efense counsel did not object to the court's ruling based on Rule 613 and therefore has not preserved this issue for review." TEX. R. APP. P. 33.1. In the trial court, Duke did not refer to Rule 613 or even use the word "bias," but clearly argued to the trial court that the line of inquiry

---

[2]The Texas Court of Criminal Appeals stated in *Schutz* that, "evidence that a person's allegations are the result of manipulation or fantasy is inadmissible." *Schutz*, 957 S.W.2d at 701. This comment, though, was in the context of expert testimony as demonstrated by the sentence immediately following which states, "Such evidence never assists the jury because the jury is just as capable as the expert of drawing the conclusions involved." *Id*. at 70–71. *Schutz* did not discuss the bias exception to Rule 608.

3

concerned S.S.'s "susceptibility." To preserve a complaint for appellate review, the record must establish (1) that the complaint was made to the trial court by a request, objection, or motion that was timely and sufficiently specific to make the trial court aware of the grounds of the complaint and (2) that the trial court ruled adversely. TEX. R. APP. P. 33.1; *Pardue v. State*, 252 S.W.3d 690, 698–99 (Tex. App.—Texarkana 2008, no pet.). A party's failure to employ "magic words" will not preclude error preservation if the party's complaint is sufficient to make the trial court aware of the grounds of the complaint. *Pardue*, 252 S.W.3d at 699. We believe the objection was sufficient to make the trial court aware of Duke's complaint.

We agree, though, that error has not been preserved for appellate review. Although Duke's objection was sufficient to make the trial court aware of his complaint and Duke introduced the affidavits for appellate review, Duke failed to make either a formal bill of exceptions or request permission to make an informal offer of proof (i.e., either in question-and-answer form or in the form of a concise statement by counsel). Because of this failure, we have no idea what S.S. would have testified to and whether S.S. would have denied making the statements in the affidavit.

To preserve a ruling excluding evidence for appellate review, the record must contain an offer of proof.[3] *See* TEX. R. EVID. 103; TEX. R. APP. P. 33.1(a); *Love v. State*, 861 S.W.2d 899,

---

[3]An exception may exist if the substance of the evidence is apparent from the context. *See* TEX. R. EVID. 103; *Fairow v. State*, 943 S.W.2d 895, 905 (Tex. Crim. App. 1997). Duke does not argue the substance is apparent from the context. There is no indication in the record concerning whether S.S. would have denied or would have admitted the statements in the affidavits.

901 (Tex. Crim. App. 1993); *Hambrick v. State*, 11 S.W.3d 241, 243 (Tex. App.—Texarkana 1999, no pet.). If an offer of proof is made in the form of a concise statement, the concise statement must include a reasonably specific summary of the proposed testimony. *Love*, 861 S.W.2d at 901; *Harty v. State*, 229 S.W.3d 849, 854 (Tex. App.—Texarkana 2007, pet. ref'd).

Rule 613(a) requires the witness to be informed of the contents of the prior statement and given a chance to either admit or deny. *See* TEX. R. EVID. 613(a). The affidavits complained of would have been admissible only if S.S. had denied making the statements contained in those affidavits. Without an offer of proof, we do not know what testimony the trial court excluded when it limited cross-examination; and, because of said lack of knowledge, we do not know whether the affidavits would have been admissible. We are not permitted to speculate as to what S.S.'s testimony would have been and then find error based on said speculation. No error in limiting cross-examination of S.S. and in excluding the affidavits has been preserved for appellate review.

*(2)    A No-Adverse-Inference Instruction Was Not Required*

Duke also argues that egregious harm occurred when the trial court failed to include a no-adverse-inferences instruction in the jury charge. Although Duke did not request such a charge or object based on its omission, Duke argues that *Almanza*[4] should govern our analysis,

---

[4]*Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984).

that error occurred because the trial court had a sua sponte duty to correctly instruct the jury,[5] and that egregious harm resulted.[6] The State responds that such a charge is required only when affirmatively requested by the defendant.

If a no-adverse-inference instruction is timely requested, a defendant has a constitutional right to such an instruction. *See Carter v. Kentucky*, 450 U.S. 288, 300 (1981); *Beathard v. State*, 767 S.W.2d 423, 432 (Tex. Crim. App. 1989). Here, however, Duke did not timely request such an instruction. The Texas Court of Criminal Appeals has recognized that a criminal defendant may not desire the instruction.[7] *See Rogers v. State*, 486 S.W.2d 786, 788 (Tex. Crim. App. 1972); *Hill v. State*, 466 S.W.2d 791 (Tex. Crim. App. 1971); *Peoples v. State*, 459 S.W.2d 868, 869 (Tex. Crim. App. 1970).

The Texas Court of Criminal Appeals, however, has not addressed this issue since the United States Supreme Court's decision in *Carter*. The Austin Court of Appeals has held, relying on *Carter*, that a trial court has no duty to include a no-adverse-inference instruction in the absence of a request. *Michaelwicz v. State*, 186 S.W.3d 601, 623 (Tex. App.—Austin 2006, pet. ref'd).

---

[5]Duke cites *Oursbourn v. State*, 259 S.W.3d 159, 180 (Tex. Crim. App. 2008). *Oursbourn* is distinguishable because it did not concern a no-adverse-inference instruction. *See id*. (reviewing failure to give Article 38.22, Section 6 instruction on voluntariness of statement for egregious harm).

[6]Duke argues one of the jurors claimed at voir dire she would hold the failure to testify against Duke. Despite the juror's later assurance otherwise, Duke argues this is evidence of egregious harm.

[7]Some attorneys believe the no-adverse-inference instruction merely emphasizes the failure to testify and, therefore, are averse to such an instruction. *See* S. R. Shapiro, *Propriety Under Griffin v. California and Prejudicial Effect of Unrequested Instruction that no Inferences Against Accused Should Be Drawn from His Failure to Testify*, 18 A.L.R.3d 1335 (LEXIS, Lexis current through 2012).

6

In *Carter*, the Supreme Court emphasized the no-adverse-inference instruction must be requested. *Carter*, 450 U.S. at 300. The approach of the Austin Court of Appeals is entirely consistent with this dicta.

We agree with the Austin Court of Appeals that, in the absence of a request, the failure to include a no-adverse-inference instruction is not jury charge error. *Michaelwicz*, 186 S.W.3d at 623. Because whether to request a no-adverse-inference instruction is a matter of strategy, a trial court does not err, in the absence of a request, by failing to give such an instruction. We do not review for egregious harm unless we first find error in the jury charge. *Taylor v. State*, 332 S.W.3d 483, 489 n.12 (Tex. Crim. App. 2011); *Posey v. State*, 966 S.W.2d 57, 60 (Tex. Crim. App. 1998). Because the jury charge did not contain error, our *Almanza* analysis is concluded. This issue is overruled.

*(3)     No Mistrial Was Required*

At the conclusion of the punishment phase, the alternate juror, Kandis Wise, accompanied the jury into its deliberation session on punishment and remained in the jury room for approximately five minutes. Wise testified that she did not participate in any discussion while in the jury room. The jury foreperson, Tammie Nichols, testified that Wise did not participate in any discussions or in any votes while she was present in the jury room for "[j]ust a couple of minutes."

7

The trial court denied Duke's motion for a mistrial.[8]

Duke argues that the trial court erred in denying the motion for mistrial. Duke directs our attention to Article 36.22 of the Texas Code of Criminal Procedure, which prohibits the presence of any person "to be with the jury while it is deliberating . . . ." TEX. CODE CRIM. PROC. ANN. art. 36.22 (West 2006). Duke argues the trial court's ruling "cannot be explained by any guiding rules or principles given the mandatory nature of Article 36.22." The State responds that the error did not result in injury to the defendant and was harmless.

To say that a statute is "mandatory" is simply to say that the law prescribes the manner in which a particular action should or shall be taken. *McCain v. State*, 67 S.W.3d 204, 210 (Tex. Crim. App. 2002). When Article 36.22 is violated, a rebuttable presumption of injury to the defendant arises. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009); *Robinson v. State*, 851 S.W.2d 216, 230 (Tex. Crim. App. 1991). The State bears the burden of rebutting the presumption. *Robinson*, 851 S.W.2d at 230. "When determining whether the State sufficiently rebutted the presumption of harm, we view the evidence in the light most favorable to the trial court's ruling and defer to the trial court's resolution of historical facts and its determinations concerning credibility and demeanor." *Ocon*, 284 S.W.3d at 884.

The record contains ample support for the trial court's conclusion that the State met its burden in rebutting the presumption of injury. Wise and Nichols both testified that Wise did not

---

[8]*See Trinidad v. State*, 312 S.W.3d 23, 29 (Tex. Crim. App. 2010) (issue not preserved for review when defense failed to object after learning of violation of Article 36.22). Duke requested a mistrial due to the presence of the alternate juror during deliberations. The issue has been preserved for appellate review.

participate in any discussion while in the jury room. The trial court did not abuse its discretion[9] in denying a mistrial.

*(4)* *No New Trial Was Required*

Duke also contends that the trial court abused its discretion in denying his motion for new trial. After trial, S.S. recanted.[10] At the hearing on the motion for new trial, S.S.'s mother testified that the civil custody proceedings had begun in 1999 and had been pending for eleven years. S.S. testified that her testimony at trial was "not true." S.S. testified she made the allegations because her father "never really gave me any attention"; she thought that, if she "said something dramatic[,] he might actually be there like my mom was." S.S. testified that, before trial, the State reviewed potential questions and what S.S.'s responses were in the video recording. S.S. believed she was "supposed to" answer the questions consistent with the State's suggestions. The State argues the trial court did not abuse its discretion.

A motion for new trial based on a recantation must satisfy the following four-part test for newly discovered evidence:

(1) the newly discovered evidence was unknown or unavailable to the movant at the time of his trial;
(2) the movant's failure to discover or obtain the evidence was not due to a lack of diligence;

---

[9]A trial court's denial of a motion for mistrial is reviewed for an abuse of discretion. *Ocon*, 284 S.W.3d at 884. "The ruling must be upheld if it was within the zone of reasonable disagreement." *Id.*

[10]The recantation was made shortly after a local newspaper published an article on Duke's conviction. S.S.'s mother testified that S.S. called her up crying because "everybody at school was talking about [the newspaper article]." S.S. testified that newspaper article made her mad, it was "nobody's business," and it made her feel "horrible."

(3) the new evidence is admissible and is not merely cumulative, corroborative, collateral, or impeaching; and,

(4) the new evidence is probably true and will probably bring about a different result on another trial.

*Keeter v. State*, 74 S.W.3d 31, 36–37 (Tex. Crim. App. 2002); *see* TEX. CODE CRIM. PROC. ANN. art. 40.001 (West 2006); *Driggers v. State*, 940 S.W.2d 699, 708 (Tex. App.—Texarkana 1996, pet. ref'd). A trial court's denial of a motion for mistrial is reviewed for an abuse of discretion. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999).

There is sufficient evidence to support the trial court's conclusion that the recantation was not "probably true." The facts of this case are very similar to *Keeter*. In *Keeter*, also a case involving indecency with a child, the child's testimony was the only evidence of guilt, and the child recanted. *Keeter*, 74 S.W.3d at 33–34. The Texas Court of Criminal Appeals held that an appellate court should affirm the trial court's decision as long as there is "some basis for disbelieving the testimony." *Id*. at 38. In *Keeter*, the child recanted after moving in with persons friendly to the defendant, there was evidence the father pressured the child into recanting, and the child gave a noncredible story that her three-year-old sister suggested she make the allegations. *Id*. at 39. With the exception of the noncredible story, the facts of this case are quite similar.

The recantation was made after S.S. had returned to live with her mother, and the trial court could reasonably infer from the evidence that her mother pressured her to recant. Further, the recantation was originally made to S.S.'s mother—who was still married to Duke. As suggested by Duke's attorney, Camille Duke took S.S., after she recanted, to a private investigator to be

10

interviewed. When interviewed by a private detective, S.S. claimed to have testified truthfully. S.S. testified she felt that she would get in trouble if she told the private investigator that she testified falsely. After the interview, S.S. recanted again to Leslie Duke, Duke's sister-in-law.

While we may not have reached the same decision as the trial court, we are obligated to defer to the trial court's determination of credibility. The trial court was able to observe the demeanor of the witnesses in this case and provided on the record an extensive analysis of its reasoning. Because there is some basis for disbelieving S.S.'s recantation, we are obligated to uphold the trial court's decision. *See id.* at 38. We overrule this issue.

*(5)*     *Sufficient Evidence Supports Duke's Conviction*

Duke claims that S.S.'s testimony is insufficient, by itself, for the jury to find guilt beyond a reasonable doubt. Duke notes that S.S.'s stories were inconsistent and that she had ample incentive to lie.

In evaluating evidentiary sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). We examine evidentiary sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable

11

inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Duke argues that *Brooks* renders the Texas standard "in line with the proper federal standard," which Duke claims requires a reversal if the evidence gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence. *See United States v. Sanchez*, 961 F.2d 1169, 1173 (5th Cir. 1992). Before *Brooks*, the Texas Court of Criminal Appeals did not subscribe to this equal inference rule. That Court, rather, held that, when the evidence "gives rise to at least two, reasonably equal, plausible inferences . . . it is clearly the jury that makes the choice of which inference to accept." *Evans v. State*, 202 S.W.3d 158, 165 (Tex. Crim. App. 2006). Without discussing *Brooks*, the Texas Court of Criminal Appeals has recently cited *Evans* for this principle. *Goad v. State*, No. PD-0435-11, 2011 Tex. Crim. App. LEXIS 1513, at *2 (Tex. Crim. App. Nov. 9, 2011). We reject the equal inference rule as argued by Duke. Further, it should be noted that this case contains direct evidence of guilt, not just circumstantial evidence.

A person commits the offense of indecency with a child by contact if he or she engages in sexual contact with the child or caused the child to engage in sexual contact with him or her, and the child was younger than seventeen years of age. TEX. PENAL CODE ANN. § 21.11(a)(1) (West 2011). Sexual contact includes "any touching by a person, including touching through clothing,

12

of the anus, breast, or any part of the genitals of a child" committed "with the intent to arouse or gratify the sexual desire of any person." TEX. PENAL CODE ANN. § 21.11(c) (West 2011).

S.S. testified that Duke inappropriately touched her on her "crotch"[11] about five times beginning when she was in the fifth grade and ending when she was in the seventh grade. S.S. testified that the abuse would occur in her mother and Duke's bedroom because the doors "would always lock." Her mother "was at college," and her little sister was at her grandmother's. S.S. testified that she would watch television in the bedroom and that Duke would start touching her. S.S. testified her shirt was on, but that she would pull her pants down to her ankles because she did not want Duke to take them off. S.S. testified that Duke touched her on the outside of her crotch. When the abuse would happen, S.S. would go to the bathroom and wait in the bathroom until her mother returned from college. S.S. also testified that Duke would touch her butt, sometimes with her clothes on and sometimes with her clothes off. S.S. also testified that Duke stuck his penis "up [her] butt." When asked if it actually went in, the record reflects that S.S. nodded her head yes. S.S. also stated Duke's penis was not "hard." S.S. testified Duke told her she "would get in trouble" if she told anyone.

In April of her seventh grade year, S.S. told a school friend, A.S., about the abuse. A.S. took a note that had been passed between her and S.S. to the school counselor, Stephanie Majors. S.S. testified she told Majors that the touching occurred during horseplay and wrestling. Majors was never asked what S.S. told her, but Majors testified S.S.'s statements were exculpatory.

_____
[11]S.S. testified the term "crotch" referred to her vagina.

13

Majors also testified that, based on her interview of S.S., Majors decided there was no obligation to report the incident to law enforcement officials. During Investigator Garrett's later investigation, Majors testified that, during a later investigation by John Garrett, Majors provided Garrett with the note and the results of her interview. Majors testified the information she provided to Garrett would have been exculpatory.[12] After learning of the note, S.S.'s mother forbade S.S. from spending time with A.S. or with B.K., another friend.

The following month, B.K. suggested a sleepover with S.S. and A.S. at S.S.'s father's house. S.S. testified the purpose of arranging this sleepover was "so I could tell my dad." During the sleepover, S.S. told her father that Duke had molested her. Eric Lee and Don Davis, deputies with the Cass County Sheriff's Department, conducted the initial investigation. The case was then transferred to Garrett. Garrett met with S.S. and Tina Richardson, an Assistant District Attorney for Cass County. Following this meeting, Garrett decided to have S.S. interviewed at the Children's Assessment Center. S.S. alleged, among other things, that Duke penetrated her anus with his penis. Later in the interview, however, S.S. stated it was only on the outside. Due to S.S.'s second statement, Garrett opted not to have S.S. examined by a sexual assault examining nurse.

At trial, S.S. briefly testifies concerning a recantation. The testimony is as follows:

> Q.[State]: Okay. Have you ever told your mom or anyone else that this didn't happen after these allegations came out? Did you ever tell your mom or anyone else that this didn't happen?

---

[12]Garrett testified that the information Majors provided him was not exculpatory.

A. Yes, ma'am.

Q. Okay. Why did you do that?

A. So I could live with my mom and see my friends.

Q. Okay. And when you say see your friends, you had some friends --?

A. That lived seven hours away.

Q. Okay. And if you didn't live with your mom, would you be able to see them?

A. No, sir.

Q. Did you ever try to tell your mom the truth?

A. Yes, ma'am, but after a while, I just gave up. It wasn't worth it.

Q. Did she ever believe you?

A. No, ma'am.

Q. [S.S.], are you telling the jury the truth today.

A. Yes, ma'am.

Duke did not cross-examine S.S. concerning this recantation.

In addition to S.S.'s testimony, B.K. testified that, sometimes, Duke, S.S., and B.K. would "play-wrestle" at S.S.'s house. B.K. testified that, on one of these occasions, while only B.K. and Duke were present, Duke "grabbed my breasts." B.K. testified she went to S.S.'s room, slammed the door, and did not come back out that night. B.K. testified she did not go "back to the house to

15

visit after that." B.K. admitted she did not tell anyone about this incident until several months later while she and A.S. were trying to convince S.S. to tell her father about Duke's abuse.

Duke and the State dispute whether to apply this Court's statement in *Scott v. State*, 202 S.W.3d 405, 408 (Tex. App.—Texarkana 2006, pet. ref'd), that the testimony of one witness is sufficient. Duke argues this statement is similar to the rejected *Thompson* "no evidence" standard.[13] The State argues this statement is still good law. We agree with the State. The testimony of a single witness, under the appropriate circumstances, is sufficient.

A rational juror could have believed S.S. and found Duke guilty beyond a reasonable doubt. The jury was in the best position to judge S.S.'s credibility. The weight and credibility of the evidence is the sole province of the jury—we will not substitute our judgment for that of the jury. *See Brooks*, 323 S.W.3d at 901–02. The evidence is sufficient.

For the reasons stated, we affirm.


Josh R. Morriss, III
Chief Justice




CONCURRING OPINION

As in many sexual assault cases, no physical evidence supports the conviction. The

---

[13]*Thompson v. Louisville*, 362 U.S. 199, 205 (1960), *abrogated in part by Jackson v. Virginia*, 443 U.S. 307 (1979).

inculpatory evidence is exclusively the testimony of the child, which makes the credibility of the child the only issue. It is not uncommon for children to give conflicting statements on this subject, given the emotional trauma attached to the charge. But when the child's testimony is the only evidence of guilt, credibility must be scrutinized. Here, the child told several conflicting accounts: first she told her teacher that no assault occurred; later, she stated the assault did occur. It was certainly within the jury's discretion to find that her testimony at trial was believable in spite of the conflicting statements. But after the trial this conflict reappeared in another form and the child recanted her trial testimony, but later told an investigator her testimony was truthful. Following that, at the motion for new trial, she again renewed her recantation and testified that Duke had not improperly touched her and that she made the allegations because she thought she needed to do something "dramatic" to gain her father's attention. Based solely on the child's testimony, Duke was convicted and sentenced to sixty years' imprisonment. Of course the jury was not aware of the duo of recantations.

The four-part test set out in the majority opinion for determining when to grant a new trial based on new evidence really comes to one issue—whether the recantation testimony is probably true and will probably bring about a different result. The Texas Court of Criminal Appeals has held that "the general rule is that where a witness has testified to material inculpatory facts against an accused and after verdict, and before motion for new trial has been acted upon, such witness makes affidavit that he testified falsely, a new trial should be granted." *Keeter v. State*, 74 S.W.3d

31, 37–38 (Tex. Crim. App. 2002). That general rule is subject to an exception—the new trial should be granted if there is "no good cause to doubt the credibility of the witness . . . ." *Id.* (citations omitted). Otherwise stated, there must be some basis for disbelieving the recantation in order to deny the motion for new trial. *Id.*[14]

Here, the trial court stated the reasons for its conclusion. The important determination was the trial court's finding that the recantation was not credible. In discussing how it reached this conclusion, the trial court determined that the testimony of the child at the trial was "sincere," while her testimony at the motion for new hearing was "one of resignation." The trial court has a great degree of discretion in making such credibility decisions for reasons that have been enumerated for centuries. Here, the trial court exercised the length and breadth of that discretion in making this decision; it believed the recantation was a result of pressure from family members and therefore was satisfied to allow the judgment to stand. As a reviewing court we have limited authority to review such a broad exercise of discretion. Understanding our limited review of judicial discretion in this instance, I concur in the judgment.

---

[14]"Other states' courts have granted a new trial when the recanted testimony comes from the sole prosecuting witness and the remaining evidence, alone, is not adequate to uphold a conviction. Some of these courts have held that it is an abuse of discretion not to grant a new trial in such a situation and that *the issue of the witness' credibility should be left to a jury*. *Robinett v. State*, 494 So. 2d 952 (Ala. App. 1986); *Bussey v. State*, 64 S.W. 268 (Ark. 1901); *Myers v. State*, 163 S.W. 1177 (Ark. 1914); *Solis v. State*, 262 So.2d 9 (Fla. App. 1972); *People v. Smallwood*, 10 N.W.2d 303 (Mich. 1943); *Commonwealth v. Mosteller*, 284 A.2d 786 (Pa. 1971); *State v. Rolax*, 529 P.2d 1078 (Wash. 1974); *State v. York*, 704 P.2d 1252 (Wash. 1982). (All of these cases resulted in a new trial because the recanted testimony was the only evidence of guilt.)." *Keeter*, 74 S.W.3d at 46 n.9 (Holcomb, J., dissenting).

Jack Carter
Justice

Date Submitted: February 15, 2012
Date Decided: March 27, 2012

Publish