

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-21-00034-CR
_____

TERRY DWIGHT TURNER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 50033-B

Before Morriss, C.J., Stevens and Carter,* JJ.
Memorandum Opinion by Chief Justice Morriss

_____
*Jack Carter, Justice, Retired, Sitting by Assignment

MEMORANDUM OPINION

Amber Davis testified that her boyfriend, Terry Dwight Turner, attacked her in mid-September 2019 at a Motel 6 in Longview, by dragging her down the motel's breezeway, throwing her against a window, and beating and choking her. As a result, a Gregg County jury found Turner guilty of assaulting Davis by impeding her breath or blood circulation.[1] On appeal, Turner claims that the evidence was insufficient to support the verdict of guilt—because there was insufficient evidence that Turner and Davis had a dating relationship and insufficient evidence that he choked her. Turner also claims that the trial court erred in failing to instruct the jury on what he asserts is the lesser offense of assault causing bodily injury. We affirm the trial court's judgment and sentence because (1) sufficient evidence supports the jury verdict and (2) Turner did not preserve any error regarding a lesser-included-offense instruction.

*(1)    Sufficient Evidence Supports the Jury Verdict*

We address Turner's claims that the evidence insufficiently establishes, first, that Turner and Davis were in a relationship as defined by Section 71.0021(b)(2) of the Texas Family Code and, second, that Turner choked Davis. We conclude that the evidence is sufficient on both challenged elements.

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019 pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex.

---

[1]*See* TEX. PENAL CODE ANN. § 22.01(b)(2)(B) (Supp.). Turner was sentenced to fifty years' confinement.

2

Crim. App. 2010) (plurality op.); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007))).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* at 298 (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

"In our review, we consider 'events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *Id.* at 297 (quoting *Hooper*, 214 S.W.3d at 13 (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985))). "It is not required that each fact 'point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.'" *Id.* (quoting *Hooper*, 214 S.W.3d at 13).

The jury, as "the sole judge of the credibility of the witnesses and the weight to be given their testimony[, could] 'believe all of [the] witnesses' testimony, portions of it, or none of it.'" *Id.* (quoting *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014)). "We give 'almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility.'" *Id.* (quoting *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008)).

"The testimony of a single eyewitness is sufficient to support a felony conviction." *Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.—Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006);[2] *see Duke v. State*, 365 S.W.3d 722, 731 (Tex. App.—Texarkana 2012, pet. ref'd) (finding that testimony of single witness can be sufficient to support conviction).

Davis testified that she and Turner had been dating about seven months at the time of the attack. In September 2019, they were living together at the Motel 6. Davis said that Turner was very jealous and that they argued on the morning of the incident. She recounted how Turner threw her onto her back on the bed and choked her. In describing the event, Davis said that Turner had "us[ed] both hands" on her and that she was fearful that he would kill her. She said that she then ran from the room, toward the motel office, that Turner pursued her, and that he fell on top of her and choked her. Davis said she was in pain and could not breathe. She believed that, when someone came out of the office, that person's presence caused Turner to stop.

Video evidence was admitted that corroborated Davis's testimony. State's exhibit 1 was a motel surveillance video showing the breezeway corridor where part of the assault happened.

---

[2]The affirming opinion focused its discussion on whether a prospective juror could be challenged for cause if that juror expressed the need to hear from more than one witness before voting to convict, even if the prospective juror believed that one witness beyond a reasonable doubt. *Lee*, 206 S.W.3d at 623–24.

4

The video reflects that Turner manhandled Davis down the breezeway past several motel rooms, threw her against room windows and the railing on the other side of the passage, forced her to the ground or fell on her, put his arm around her neck in a chokehold, and then put his hands around her neck. The video depicts other motel patrons emerging from their rooms and heading toward Turner and Davis, at which time Turner left.

Officer David Cheatham responded to the 9-1-1 call from Motel 6. He interviewed Davis, whom he described as "visibly upset" and crying as she described Turner's actions. Cheatham's body-camera recording of the interview was played for the jury. On that recording, Davis sobbed as she described Turner dragging her down the corridor and banging her against a window and an air conditioner. Cheatham testified to seeing hand or finger marks on Davis's neck and injuries to her elbow and finger. He testified that the injuries he observed were consistent both with Davis's narrative and other strangulation cases he had investigated. He also told the jury that only a small amount of pressure can impede a person's breath or choke them.

Another Longview police officer, Joseph Nelms, testified that he also spoke to Davis at the scene. He testified to watching the motel's surveillance video and seeing the above-described footage of Turner putting Davis in a chokehold then putting his hands around her neck. Nelms also described red marks on Davis's neck of "varying degrees of redness" and an abrasion on Davis's left elbow. To Nelms, Davis identified Turner as her assailant and was "very upset" and "afraid," "looking around repeatedly" fearful that Turner could still be around. Nelms testified of Davis's report that Turner "put his hand around her throat and squeezed" to the point that "she couldn't breathe."

5

Kenneth Stafford was a guest at the motel. He testified that he was in the motel lobby when he saw Turner chasing a "screaming" Caucasian lady and "trying to subdue her." He saw Turner "put his hands on her" while she resisted and tried to get away. He described Turner as "pushing her down the walkway" until they fell.

Turner asserts that only Davis testified to being choked by him. As stated above, a conviction may stand on the testimony of one witness. Turner points to Davis's trial testimony that he choked her in their motel room before he chased her down the breezeway corridor, where he fell on top of her and choked her. Through cross-examination of Davis and the two testifying police officers, Turner established that Davis did not tell the officers about being choked in the motel room and that the incident was not described in the officers' reports. According to Turner's appellate argument, this inconsistency rendered Davis's testimony non-credible. While there may have been inconsistency, the effect of any such inconsistency on Davis's credibility was a matter for the jury to resolve. *See Owens v. State*, 381 S.W.3d 696, 709 (Tex. App.— Texarkana 2012, no pet.) (citing *McDonald v. State*, 462 S.W.2d 40, 41 (Tex. Crim. App. 1970)). There was certainly legally sufficient evidence that Turner choked Davis.

Next, we turn to Turner's challenge to the evidence to prove a dating relationship with Davis as contemplated by Texas law. An element of occlusion assault is that the "defendant and victim were in a statutorily defined 'dating relationship,' i.e. 'a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature.'"[3] *See* TEX. PENAL CODE ANN. § 22.01(b)(2).

---

[3]TEX. FAM. CODE ANN. § 71.0021(b).

Despite Davis's clear testimony that she and Turner dated several months before this assault and were living together at the time, Turner claims that such testimony was eviscerated by evidence that the motel in question had a history of hosting prostitution. The argument Turner offers here is that, because the Motel 6 where the attack occurred was "known for prostitution," "the relationship that [Davis] and [Turner] had was more of a business arrangement rather than one of members of a household living together." On cross-examination, Turner asked Officer Nelms, "That motel is known for prostitution, isn't it?" Nelms answered, "I believe that's what I was told." Turner attempted to get Nelms to testify that Davis had told her that she was a prostitute, but the State's objection that such constituted improper impeachment was sustained, and the jury was instructed to disregard that question.

Turner's argument is not persuasive. Davis clearly testified that she and Turner had been dating for about seven months before the assault at the motel and that she and Turner lived there together. That provided sufficient evidence to support the statutory requirements. *See* TEX. FAM. CODE ANN. § 71.0021; TEX. PENAL CODE ANN. § 22.01(b)(2).

The evidence was sufficient to support the jury's verdict of guilt.

*(2)    Turner Did Not Preserve any Error Regarding a Lesser-Included-Offense Instruction*

Turner asserts that the trial court erred in failing to instruct the jury on what he describes as the lesser-included offense of assault causing bodily injury. We find that this argument was not preserved for our review.

Turner asked the trial court to instruct the jury on injury assault, which he portrays as a lesser-included offense to the charged occlusion assault. The trial court replied that it would take

7

the request under advisement. After a lunch recess and opportunity to review the proposed jury charge,[4] Turner affirmatively stated that he had no objection to the charge as written, that is, without an instruction on a lesser offense.

"Requests for lesser-included instructions, like requests for defensive instructions, 'frequently depend upon trial strategy and tactics,' so they are not considered 'the law applicable to the case.'" *Williams v. State*, No. PD-0477-19, 2021 WL 2132167, at *6 (Tex. Crim. App. May 26, 2021) (quoting *Tolbert v. State*, 306 S.W.3d 776, 780–81 (Tex. Crim. App. 2010)) ("lesser-included instructions are like defensive issues and . . . trial court is not statutorily required to *sua sponte* instruct the jury on lesser-included offenses"). Because an instruction on the lesser offense of injury assault was a defensive issue and Turner procedurally defaulted[5] regarding that claim, he forfeited the request. We overrule this point of error.

---

[4]The State had informed the court that it had a case from the Texas Court of Criminal Appeals from "a couple of months ago" "saying that assault is not the lesser to a strangulation" allegation. Turner was tried in April 2021. On March 10, 2021 the Texas Court of Criminal Appeals held that "bodily injury assault that results in a non-impeding injury is not an included offense of occlusion assault." *Ortiz v. State*, 623 S.W.3d 804, 806 (Tex. Crim. App. 2021). From the context, it seems that the State was answering Turner's request with a reference to *Ortiz*. Turner did not raise or argue his request again and then announced that he had no objection to the trial court's charge. "[I]f from the record as a whole the appellate court simply cannot tell whether an abandonment was intended or understood, then, consistent with prior case law, it should regard the 'no objection' statement to be a waiver of the earlier-preserved error." *Thomas v. State*, 408 S.W.3d 877, 885 (Tex. Crim. App. 2013). Turner abandoned his request after failing to secure a ruling on it.

[5]Turner was required to object and receive a ruling on his request for an instruction on injury assault. *See* TEX. R. APP. P. 33.1(a).

> When, under general rules of procedural default, an appellate court holds a defendant has procedurally defaulted a particular claim by not timely raising it in the trial court, the appellate court does not concede that "error" has occurred. In these situations, all the appellate court is saying is that it will not address the merits of a claim raised for the first time on appeal. This is important because *Almanza* [*v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985),] does not apply unless the appellate court first finds "error" in the jury charge.

*Posey v. State*, 966 S.W.2d 57, 61 (Tex. Crim. App. 1998). Turner obtained no ruling from the trial court and then announced no objection to the charge as presented. *See supra* note 7.

We affirm the trial court's judgment and sentence.

Josh R. Morriss, III
Chief Justice

Date Submitted:     December 27, 2021
Date Decided:       March 9, 2022

Do Not Publish

9