**Opinion filed October 6, 2022**



# In The

# Eleventh Court of Appeals

_____

## No. 11-21-00175-CR

_____

## JOSEPH FOSTER, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 441st District Court**
**Midland County, Texas**
**Trial Court Cause No. CR46899**

## M E M O R A N D U M   O P I N I O N

A jury found Appellant, Joseph Foster, guilty of two first-degree felony offenses: securities fraud involving $100,000 or more,[1] and theft of property valued

---

[1]*See* Act of May 18, 2011, 82d Leg., R.S. ch. 523 (H.B. 2342), § 2, 2011 Tex. Gen. Laws 1298, 1299 (codified at TEX. REV. CIV. STAT. ANN. art. 581-29(C)(3), (C)(4)(c)) (repealed effective Jan. 1, 2022) (current version at TEX. GOV'T CODE ANN. § 4007.203(a)(1)(C), (a)(2)(A), (b)(3) (West Supp. 2022)). The Texas Legislature repealed the Securities Act and, without making substantive changes to the Act, transferred its provisions to the Texas Government Code effective January 1, 2022. *See* Act of May 21, 2019, 86th Leg., R.S., ch. 491 (H.B. 4171), §§ 3.01, 4.01–.02, 2019 Tex. Gen. Laws 1239, 1317 ("Nonsubstantive Revision of The Securities Act, Including Conforming Amendments") (codified at TEX. GOV'T CODE ANN. §§ 4001.001–4008.105 (West Supp. 2022)).

at $200,000 or more,[2] with both offenses alleged to have been committed in 2011. Upon Appellant's election, the trial court assessed Appellant's punishment at confinement for eleven years in the Institutional Division of the Texas Department of Criminal Justice for each conviction, with the sentences to run concurrently.

Appellant raises two issues on appeal. First, Appellant contends that we should reverse his convictions and enter acquittals because there was insufficient evidence to establish that Midland County was the proper venue for prosecution. Second, Appellant asserts that the trial court's failure to include a jury instruction in the court's charge that relates to Appellant's right to not testify (commonly referred to as a "no-adverse-inference" instruction) constituted harmful and reversible error. We affirm.

## Background Facts

The State alleged in the indictment that Appellant engaged in securities fraud by offering to sell and selling interests in the Quay 411 – Wallace Ranch Joint Venture, a security, to several individuals while failing to disclose material facts to such individuals.[3] Specifically, the State alleged that Appellant failed to disclose that invested funds were used for personal expenses and for purposes other than for

---

[2]*See* Act of May 29, 2011, 82d Leg., R.S., ch. 1234 (S.B. 694), § 21, 2011 Tex. Gen. Laws 3302, 3310 (amended effective Sept. 1, 2015) (current version at TEX. PENAL CODE ANN. § 31.03(e)(7) (West 2019)).

[3]As noted in *Bridwell v. State*:

> [T]he Texas Securities Act prohibits the use of fraud or fraudulent practices in connection with the sale or offer of securities. [The Act] defines fraud or fraudulent practice to include "an intentional failure to disclose a material fact." The purpose of the Texas Securities Act is to require sellers of securities to be truthful and provide investors wi[th] all material facts, allowing them to make informed decisions. An omitted fact is material if there is a substantial likelihood that it would have assumed actual significance in the deliberations of a reasonable investor, in that it would have been viewed by the reasonable investor as significantly altering the total mix of available information used in deciding whether to invest.

No. 05-07-00258-CR, 2008 WL 467271, at *5 (Tex. App.—Dallas Feb. 23, 2008, no pet.) (not designated for publication) (citations omitted).

"drilling, testing and completion of an oil and/or gas well," each constituting a material fact. The State additionally alleged that Appellant failed to disclose to investors that he had prior judgments, court-ordered prohibitions, and a cease-and-desist order pertaining to his prior business dealings. The State alleged that Appellant obtained an amount that was $100,000 or more while committing the securities fraud. In Count II, the State alleged that Appellant committed theft by deception by creating and confirming false impressions with the intent to deprive the investors of currency in an aggregate amount of $200,000 or more.

At trial, several witnesses testified during the State's case-in-chief. Four of the investors testified at length regarding the money paid to Appellant for Appellant to drill and attempt to obtain profits through the Quay 411 – Wallace Ranch Joint Venture. The investors testified regarding Appellant's failures to (1) disclose his prior judgments[4]; (2) disclose that Appellant spent investors' funds on personal expenses and other purposes unrelated to their investment; (3) communicate with or respond to the investors' individual e-mails, letters, and phone calls requesting information; and (4) return the money invested after Appellant failed to obtain the rights to lease the land subject to the Quay 411 – Wallace Ranch Joint Venture. Each of the investors testified as to the amount paid to Appellant, which, in the aggregate, totaled over $320,000.

Two witnesses from the Texas State Securities Board (Securities Board) testified during the State's case-in-chief. William Mitchell, a financial examiner and investigator with the Securities Board, explained the deposits and deductions from Appellant's accounts. Mitchell detailed the investors' deposits and Appellant's expenditures for personal use, including Appellant's purchases of antiques and

---

[4]The State offered, and the trial court admitted, the following prior judgments, court-ordered prohibitions, and cease-and-desist orders against Appellant and his companies: a Minnesota cease-and-desist order, a Wisconsin order, two Midland County judgments, and a default judgment from Tarrant County.

3

jewelry, and for payment to Appellant's other business accounts unrelated to the Quay 411 – Wallace Ranch Joint Venture. The State tendered Suzanne Steinmetz, an enforcement attorney with the Securities Board, as a securities expert. She testified that the Quay 411 – Wallace Ranch Joint Venture was, in fact, a security. Steinmetz testified that Appellant's prior judgments and expenditures on personal items and unrelated ventures constituted "material facts" required to be disclosed by Appellant to the investors.

*Analysis*

*Venue*

In Appellant's first issue, he asserts that the State provided insufficient evidence to prove that venue was proper in Midland County. He bases his challenge on the evidence that Appellant conducted business with the alleged victims in various locations but that none of the dealings occurred in Midland County. Appellant asserts that the evidence shows that his interactions with the alleged victims occurred in Germany and in California, as well as the following counties in Texas: Hemphill, Harris, Collin, Tarrant, and Travis. In response, the State contends that Appellant did not preserve this issue for review and, alternatively, that venue was proper in Midland County because (1) "all of the funds raised by Appellant from investors . . . were wired or deposited in [a bank] located in Midland County," and (2) Appellant had a prior judgment from Midland County, a "material fact" omitted in connection with the securities fraud allegation in Count I, Paragraph Seven of the indictment.

Venue is not an element of an offense, and the State's failure to prove it does not implicate sufficiency of the evidence and does not require acquittal under *Jackson v. Virginia*.[5] *Schmutz v. State*, 440 S.W.3d 29, 35 (Tex. Crim. App. 2014). Instead, when a party raises a challenge to venue on appeal, the Texas Rules of

---

[5] 443 U.S. 307 (1979).

Appellate Procedure require appellate courts to presume that venue was proven unless venue is "disputed in the trial court" or "the record affirmatively shows the contrary." TEX. R. APP. P. 44.2(c)(1); *see Schmutz*, 440 S.W.3d at 35. Venue need only be proven by a preponderance of the evidence. TEX. CODE CRIM. PROC. ANN. art. 13.17 (West 2015); *Fairfield v. State*, 610 S.W.2d 771, 779 (Tex. Crim App. [Panel Op.] 1981).

Here, Appellant did not dispute venue in the trial court. Accordingly, we presume that venue was proven in the trial court unless the record affirmatively shows otherwise. *See* TEX. R. APP. P. 44.2(c)(1). Appellant essentially relies on the general venue statute, Article 13.18 of the Texas Code of Criminal Procedure, to assert that the State had to show that all or part of the offense was committed in Midland County. *See* CRIM. PROC. art. 13.18; *Murphy v. State*, 112 S.W.3d 592, 604 (Tex. Crim. App. 2003). However, the legislature has enacted special venue provisions for specific types of crimes or particular facts. *Murphy*, 112 S.W.3d at 604 (citing *Soliz v. State*, 97 S.W.3d 137, 141 (Tex. Crim. App. 2003)). The special venue statutes expand the number of counties in which an offense may be prosecuted, and they "are a species of codified 'substantial contacts' jurisdiction" for a variety of reasons, including the role that several different counties may have in a particular crime. *Soliz*, 97 S.W.3d at 141.

In addition to asserting that the alleged conduct occurred in Texas counties other than Midland County, Appellant contends that the evidence showed that it also occurred in Germany and California. Article 13.01 provides as follows: "Offenses committed wholly or in part outside this State, under circumstances that give this State jurisdiction to prosecute the offender, may be prosecuted in any county in which the offender is found or in any county in which an element of the offense occurs." CRIM. PROC. art. 13.01. The evidence at trial detailed that Appellant lived in Midland County during the time that the alleged conduct occurred, that he

5

deposited the money obtained from the alleged victims into a bank in Midland County, and that he used the funds that he obtained in Midland County. With respect to the theft charge, Article 13.08 provides that "[w]here property is stolen in one county and removed to another county, the offender may be prosecuted either in the county in which the property was stolen or in any other county through or into which the property was removed." CRIM. PROC. art. 13.08(a) (West Supp. 2021). Accordingly, the State established by a preponderance of the evidence that venue was proper in Midland County. We overrule Appellant's first issue.

*"No-Adverse-Inference" Jury Instruction*

In Appellant's second issue, he asserts that the trial court's failure to include a "no-adverse-inference" instruction in its charge to the jury harmed Appellant and that the purported error "entitle[s] him to a new trial." The State responds that trial counsel did not request such an instruction and, alternatively, that Appellant did not suffer egregious harm from the trial court's failure to include the instruction. Appellant concedes that trial counsel did not request the desired instruction but asserts that Appellant relied on the trial court's statement that it would include the instruction in the court's final charge "when [Appellant] made his decision not to testify in his defense."

Under Article 36.14, the trial court is required to give the jury a written charge "setting forth the law applicable to the case." CRIM. PROC. art. 36.14 (West 2007); *Vega v. State*, 394 S.W.3d 514, 518 (Tex. Crim. App. 2013). A review of alleged jury-charge error involves a two-step analysis. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994). We must first determine whether the charge contained any actual error. *Ngo*, 175 S.W.3d at 743–44; *Abdnor*, 871 S.W.2d at 731–32. If there was actual error, we must next determine whether the error resulted in sufficient harm to require reversal. *Ngo*, 175 S.W.3d at 743–44; *Abdnor*, 871 S.W.2d at 731–

6

32; *see also Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985); *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015) (describing *Almanza* harm analysis for jury charge error).

While a trial court "must instruct jurors that they may not draw any adverse inference from a defendant's failure to testify," it must do so only upon a request from trial counsel. *See Beathard v. State*, 767 S.W.2d 423, 432 (Tex. Crim. App. 1989) (citing *Carter v. Kentucky*, 450 U.S. 288, 305 (1981)); *Michaelwicz v. State*, 186 S.W.3d 601, 622–24 (Tex. App.—Austin 2006, pet. ref'd); *see also Anderson v. State*, 504 S.W.2d 507, 511 (Tex. Crim. App. 1974) (trial court did not have duty to give "no-adverse-inference" instruction where trial counsel did not object to the charge or request such an instruction). In the absence of a request, the failure to include a no-adverse-inference instruction is not jury charge error. *Duke v. State*, 365 S.W.3d 722, 727 (Tex. App.—Texarkana 2012, pet. ref'd); *Michaelwicz*, 186 S.W.3d at 623. A finding that the trial court did not commit error precludes any harm analysis under *Almanza*. *Tolbert v. State*, 306 S.W.3d 776, 779 (Tex. Crim. App. 2010) (citing *Posey v. State*, 966 S.W.2d 57, 61 (Tex. Crim. App. 1998)).

Appellant seeks to evade this rule by relying on the trial court's statement to him that a no-adverse-inference instruction would be included in the court's charge to the jury—a statement made by the trial court to Appellant when it warned him about his decision to testify at trial. However, trial counsel made several objections to the proposed jury charge. Counsel did not, however, object to the absence of a "no adverse inference" instruction in the final charge. Courts have noted that as part of sound trial strategy, trial counsel may choose not to request a jury instruction on a defendant's election not to testify. *See Duke*, 365 S.W.3d at 727; *Michaelwicz*, 186 S.W.3d at 624. Thus, trial counsel's choice not to object to the absence of the no-adverse-inference instruction may have constituted sound trial strategy. Because trial counsel did not object to the absence of the complained-of instruction, and

because the decision to not object may have been a matter of trial strategy, the court's charge to the jury was not error irrespective of the trial court's earlier statements to Appellant.  We overrule Appellant's second issue.

*This Court's Ruling*

We affirm the judgments of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


October 6, 2022

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.