

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-19-00221-CR

JACE MARTIN LAWS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 188th District Court
Gregg County, Texas
Trial Court No. 48,106-A

Before Morriss, C.J., Burgess and Stevens, JJ.
Opinion by Justice Stevens
Dissenting Opinion by Justice Burgess

OPINION

A Gregg County jury convicted Jace Martin Laws of assaulting peace officers Nathaniel Lemmon and Christopher Byrdsong. *See* TEX. PENAL CODE ANN. § 22.01(b-2) (Supp.). The jury also assessed a sentence of thirty years' imprisonment for Lemmon's assault and forty years' imprisonment for Byrdsong's assault.

On appeal, Laws argues that the evidence was legally insufficient because the State failed to prove that his name was Jace Martin Laws. He also argues that the trial court erred by striking a veniremember with a possible theft conviction for cause, admitting extraneous offenses during guilt/innocence, refusing a lesser-included-offense instruction, and allowing an alternate juror to be present in the jury room during deliberations. In his last point of error, Laws argues that his sentences are grossly disproportionate to the offenses.

We find that (1) Laws's argument that the State failed to prove his name is meritless, (2) the trial court did not abuse its discretion by striking the veniremember for cause, (3) the trial court's evidentiary rulings were not an abuse of discretion, (4) Laws was not entitled to a lesser-included-offense instruction, (5) Laws failed to preserve and adequately brief his fifth point of error, and (6) Laws failed to preserve his last point of error for review. As a result, we affirm the trial court's judgment.

## I.      Factual Background

Lemmon, an officer with the Longview Police Department (LPD), encountered Laws while investigating a call for a suspicious vehicle at an electrical substation. According to

2

Lemmon, dispatchers reported that the vehicle Lemmon found was involved in another crime under investigation. Laws exited the driver's side of the vehicle, and Byrdsong, a patrol officer with the LPD, arrived at the scene. After Byrdsong's arrival, Laws began trying to take off his coveralls, revealing what looked like a gun tucked underneath them. Although Laws yelled out that the gun was fake, a fact that was later confirmed, Byrdsong drew his weapon when he saw Laws grab "what appeared to be a handgun." From there, efforts to restrain Laws turned into an all-out brawl, as shown by the digital recording of his arrest.

Instead of complying with Lemmon's and Byrdsong's instructions, Laws fled and jumped over a barricade but was quickly caught by Byrdsong. Byrdsong testified that Laws struck him in several places, including his genitals, while he was trying to apprehend Laws. Laws was able to evade Byrdsong and jumped back over the barricade where Lemmon was waiting. Lemmon's effort to subdue Laws also failed. Lemmon testified that Laws struck and clawed at his face, scratched his gums, injured his ankle, and tried grabbing his genitals. Even though Lemmon tased Laws, Laws continued fighting and trying to get back into the car.

Byrdsong intervened when he saw Laws strike Lemmon but was again overtaken by Laws, who grabbed his gun during the fight. Although Byrdsong was able to quickly get Laws's hand off his gun, Laws grabbed the mace held by Lemmon and sprayed both Byrdsong and Lemmon with the mace before other LPD backup officers arrived at the scene to subdue Laws. Photographs of Byrdsong's injuries were shown to the jury, which, after watching the fight on the recording, convicted Laws of two counts of assaulting a peace officer.

## II.  Laws's Argument that the State Failed to Prove His Name Is Meritless

In his first point of error, Laws does not argue that the State failed to prove that he was the person who intentionally, knowingly, or recklessly assaulted Lemmon and Brydsong.  This is likely because the recording and in-court identifications were legally sufficient to establish the element of identity.  Laws also fails to challenge any other element of the hypothetically correct jury charge.[1]  Instead, Laws argues that the evidence is legally insufficient only because the State failed to prove his full name at trial.  The record shows that this complaint is meritless.

The State's indictment was filed against "JACE MARTIN LAWS," and it was undisputed that Laws's full name was Jace Martin Laws.  Laws identified himself as "Jace Martin Laws" during a bond reduction hearing before trial.  At the beginning of trial, the State read the indictment, including Laws's full name, without any complaint raised by Laws.  Finally, Laws took the stand in his own defense and clearly identified himself as "Jace Martin Laws." During cross-examination, the State introduced Laws's prior convictions, which also contained his full name.  As a result, Laws's complaint that the State failed to prove his name at trial is unsupported by the record.

Because we will not reverse a trial court's judgment based on a meritless complaint, we overrule Laws's first point of error.

---

[1] *See Warren v. State*, 98 S.W.3d 739, 742 (Tex. App.—Waco 2003, pet. ref'd) (finding that "the defendant's name is not a 'substantive element' of the offense of aggravated assault") (citing *Fuller v. State*, 73 S.W.3d 250, 254 (Tex. Crim. App. 2002)).

**III.    The Trial Court Did Not Abuse Its Discretion in Striking the Veniremember for Cause**

In his second point of error, Laws argues that the trial court erred in striking a veniremember for cause after she indicated that she might have a theft conviction. We disagree.

**A.    Standard of Review**

"We review a trial court's ruling on a challenge for cause with considerable deference because the trial judge is in the best position to evaluate a venire member's demeanor and responses." *Tracy v. State*, 597 S.W.3d 502, 512 (Tex. Crim. App. 2020). "When a venire member's answers in voir dire are ambiguous, vacillating, unclear, or contradictory, particular deference is given to the trial court's decision." *Id.* "We look at the entire record to determine whether there is sufficient evidence to support the trial court's ruling." *Id.* "A trial judge's ruling on a challenge for cause may be reversed only for a clear abuse of discretion." *Id.*

**B.    Theft Is a Disqualifying Factor**

"A challenge for cause is an objection made to a particular juror, alleging some fact which renders the juror incapable or unfit to serve on the jury." TEX. CODE CRIM. PROC. ANN. art. 35.16(a). The State can challenge a prospective juror if "the juror has been convicted of misdemeanor theft or a felony" or "is under indictment or other legal accusation for misdemeanor theft or a felony." TEX. CODE CRIM. PROC. ANN. art. 35.16(a)(2)–(3). Under Article 35.19, "[n]o juror shall be impaneled when it appears that he is subject to" these challenges for cause "in Article 35.16, though both parties may consent." TEX. CODE CRIM. PROC. ANN. art. 35.19. Thus, "[a] person who has been convicted of, or who has a pending charge for, either misdemeanor or felony theft is absolutely disqualified as a juror." *Gardner v.*

5

*State*, 306 S.W.3d 274, 300–01 (Tex. Crim. App. 2009). "[T]he reason that persons under legal accusation for theft are absolutely disqualified from jury service 'is to insure the probity of the jury[.]'" *White v. State*, 225 S.W.3d 571, 576 (Tex. Crim. App. 2007) (quoting *DeBlanc v. State*, 799 S.W.2d 701, 707 (Tex. Crim. App. 1990)).

**C.      The Veniremember Indicated She May Have a Theft Conviction**

During voir dire, the trial court questioned Veniremember 26 separately, as shown by the the following discussion:

> *THE COURT*:  Juror 26, how are you doing? . . . . What did you want to talk to us about? . . . .
>
> *VENIREPERSON* [*26*]:  I've got child support court on Wednesday.
>
> *THE COURT*:  Okay.  Do you have a theft case?  Were you convicted of theft? . . .
> It might have been 20 years ago.
>
> *VENIREPERSON* [*26*]:  Yes.
>
> *THE COURT*:  You think it was a theft?
>
> *VENIREMEMBER* [*26*]:  Yeah.
>
> *THE COURT*:  Okay.  Well, you can't serve.  I mean, it's just one of those things . . .
> So y'all have any more questions . . . ?
>
> [*BY THE DEFENSE*]:  I do.  Was it a conviction, or what happened on that case?
>
> *VENIREPERSON* [*26*]:  It was dismissed, I think.
>
> [*BY THE DEFENSE*]:  So you weren't convicted?
>
> *VENIREPERSON* [*26*]:  I don't think -- like I can't even remember.

6

[*BY THE STATE*]:  I know it was a long time ago.  Did you have to do any probation?  Did you have to do any time in jail?

*VENIREPERSON* [*26*]: Community service . . . .
I can't remember because it was -- I was in school.

. . . .

(*Venireperson [26] exits courtroom*)

[*BY THE DEFENSE*]:  I'm going to let you rule on that one.

*THE COURT*:  I know.  What do y'all say?

[*BY THE STATE*]:  I'm going to say we strike her for cause.  She said she did community service, it could be deferred.  [Defense counsel] is right.

*THE COURT*:  Yeah, it sounds like a conviction to me.

[*BY THE STATE*]:  Err on the side of caution.

*THE COURT*:  Okay.

[*BY THE DEFENSE*]:  Judge, can I have an extra peremptory based on the erroneous strike for cause.

*THE COURT*:  No. . . . It sounds like she got convicted.

**D.        There Was No Abuse of Discretion in Sustaining the State's Challenge**

Laws argues that the trial court erred in striking Veniremember 26 because her theft conviction was unconfirmed.  However, the Texas Court of Criminal Appeals has explained that "Article 35.19 does not require that the trial judge be certain about a veniremember's disqualification; he may disqualify a prospective juror if it 'appears' that the person is subject to disqualification under the statute." *Gardner*, 306 S.W.3d at 300 (quoting *Chambers v. State*, 903 S.W.2d 21, 28 (Tex. Crim. App. 1995)); *see* TEX. CODE CRIM. PROC. ANN. art. 35.19.  This is

7

because "[t]he issue of whether a venire[member] is disqualified under the statute is one of fact; thus, if the evidence is conflicting, the trial judge does not abuse his discretion by finding either that the veniremember is or is not disqualified." *Gardner*, 306 S.W.3d at 300–01.

Because Veniremember 26 testified that she believed she may have been convicted of theft, we find no abuse of discretion in the trial court's decision to strike her for cause.[2] As a result, we overrule Laws's second point of error.

## IV. The Trial Court's Evidentiary Rulings Were Not an Abuse of Discretion

### A. Standard of Review

"We review a trial court's decision to admit or exclude evidence for an abuse of discretion." *Flowers v. State*, 438 S.W.3d 96, 103 (Tex. App.—Texarkana 2014, pet. ref'd) (citing *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010)). "Abuse of discretion occurs only if the decision is 'so clearly wrong as to lie outside the zone within which reasonable people might disagree.'" *Id.* (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g))). "We may not substitute our own decision for that of the trial court." *Id.* (citing *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003)). "We will uphold an evidentiary ruling if it was correct on any theory of law applicable to the case." *Id.* (citing *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009)).

---

[2]Even had Veniremember 26 "been improperly disqualified by the trial judge, appellant failed to show that any error affected his substantial rights." *Gardner*, 306 S.W.3d at 301. "Absent a showing of constitutional error, a defendant's rights are affected only by harm caused by jurors who served on the case, not by those excused from service." *Id.* Here, as in *Gardner*, "[t]here is no suggestion that the trial judge's disqualification . . . deprived appellant of a lawfully constituted jury, all of whose members were qualified to serve." *Id.*

**B.      Factual Background**

Cedric Davis, an officer with the LPD, arrived after the melee and accompanied Laws to the hospital for injuries sustained during the fight.  Without objection, Davis testified that Laws was "kind of irate because he was kind of yelling and screaming a lot" and had to be restrained several times,[3] prompting the following discussion:

> Q.      ([*BY THE STATE*]):  So even while he was in the hospital –
>
> [*BY THE DEFENSE*]:  Judge, I'll object to . . . relevance at this point.
>
> *THE COURT*:  I'm going to overrule.
>
> . . . .
>
> Q.      ([*BY THE STATE*]):  Is he irate in the hospital?
>
> A.      Yes, sir.
>
> Q.      All right.  Was he vulgar to the officers?
>
> [*BY THE DEFENSE*]:  Judge, object to relevance.
>
> *THE COURT*:  I'm going to overrule.
>
> Q.      ([*BY THE STATE*]):  Was he vulgar?
>
> A.      He was.
>
> Q.      Was he threatening?

---

[3]Laws raises complaints about this unobjected-to testimony.  "A party's objection must be timely in order to preserve error."  *Juarez v. State*, 461 S.W.3d 283, 300 (Tex. App.—Texarkana 2015, no pet.) (citing TEX. R. APP. P. 33.1(a)(1)).  "If a party 'fails to object until after an objectionable question has been asked and answered, and he can show no legitimate reason to justify the delay, his objection is untimely and error is waived.'"  *Id.* (quoting *Grant v. State*, 345 S.W.3d 509, 512 (Tex. App.—Waco 2011, pet. ref'd) (quoting *Dinkins v. State*, 894 S.W.2d 330, 355 (Tex. Crim. App. 1995))).

9

Before Davis could answer the question, the defense asked to approach the bench. In addition to the relevance objection, Laws argued that "this evidence would violate Rule 403." The State argued that, while in the hospital, Laws said, "If I could have I would have -- I should have grabbed his gun and shot him, talking about Officer Lemmon." The State argued that the statement was relevant to show Laws's state of mind at the time of the offense. The trial court agreed and overruled Laws's relevance and Rule 403 objections. As a result, Davis testified before the jury that Laws was yelling, cursing, and rambling on the way to the hospital and said that "he could have or should have took Officer Lemmon's gun . . . [and] could have shot him."

## C. Analysis

Laws argues that his statement at the hospital and Davis's testimony that he was vulgar to the officers constituted irrelevant evidence. Evidence is relevant if it has any tendency to make a fact of consequence "more or less probable than it would be without the evidence." TEX. R. EVID. 401. "The threshold for relevance under Rule 401 is very low," *Haley v. State*, 173 S.W.3d 510, 520 (Tex. Crim. App. 2005), and the evidence "need not prove the point by itself." *Beham v. State*, 559 S.W.3d 474, 482 (Tex. Crim. App. 2018).

During voir dire, Laws informed the jury that there were "some defenses to assault on a peace officer," such as the justification of necessity and self-defense. Laws asked the jury whether they believed someone could defend themselves from a peace officer and questioned them about their opinions on the justification of necessity and self-defense. From the recording of the arrest shown at trial, the jury could have believed that Laws was in fear for his life. During cross-examination of Byrdsong, Laws established that he was hit several times and

10

repeatedly said, "[P]lease don't kill me." Laws also established that he was not charged with attempting to take a weapon from a peace officer, that Byrdsong's report did not include a reference to any such attempt, and that Lemmon did not see Laws reach for Byrdsong's weapon. The evidence showed that Laws, Lemmon, and Byrdsong were transported to the same hospital for treatment of their injuries.[4]

In order to convict, the jury was required to find that Laws's acts were intentional, knowing, or reckless.[5] "A culpable mental state generally can be established only by inferences from the acts, words, and conduct of the accused." *Carson v. State*, 422 S.W.3d 733, 743 (Tex. App.—Texarkana 2013, pet. ref'd). In determining a defendant's intent, "we should look at 'events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *Wirth v. State,* 361 S.W.3d 694, 697 (Tex. Crim. App. 2012) (quoting *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)).

Because Laws's statement at the hospital that he should have grabbed the gun and could have shot an officer directly referenced the assault, the trial court was within its discretion to

---

[4]The trial court included the following instruction in its jury charge:

**The use of force to resist an arrest or search is justified:**

(1)      If, before the actor offers any resistance, the peace officer uses or attempts to use greater force than necessary to make the arrest or search; and

(2)      When and to the degree the actor reasonably believes the force is immediately necessary to protect himself against the peace officer's use or attempted use of greater force than necessary.

[5]"A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." TEX. PENAL CODE ANN. § 6.03(a).

conclude that it was relevant to show that Laws assaulted Lemmon and Byrdsong intentionally, knowingly, or recklessly. The trial court was also within its discretion to find that Laws's vulgarity toward the officers, even after being transported to the hospital, had a tendency to make the fact that he acted with the requisite intent—and not simply out of fear for his life—more probable. We find no abuse of discretion in the trial court's ruling that the evidence was relevant.

Laws also argues that the trial court's admission of his statements and demeanor in the hospital violated Rule 404(b) of the Texas Rules of Evidence. The State argues that Laws has failed to preserve this issue for our review. We agree. A "point of error on appeal must comport with the objection made at trial." *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); *see Swain v. State*, 181 S.W.3d 359, 367 (Tex. Crim. App. 2005). This is because, to preserve a complaint for our review, a party must first present "to the trial court a timely request, objection, or motion stating the specific grounds for the desired ruling if not apparent from the context." TEX. R. APP. P. 33.1(a)(1). Our review of the record reveals that Laws did not raise a Rule 404(b) issue before the trial court. As a result, the issue is unpreserved.

Next, Laws argues that the admission of the evidence violated Rule 403 because its probative value was substantially outweighed by the danger of unfair prejudice.[6] When conducting a Rule 403 balancing test, we

---

[6]As noted by the Texas Court of Criminal Appeals, "Rule 403's 'use of the word "may" reflects the draftsman's intent "that the trial judge be given very substantial discretion in 'balancing' the probative value on the one hand and the 'unfair prejudice' on the other, and that he should not be reversed simply because an appellate court believes that it would have decided the matter otherwise."'" *Powell v. State*, 189 S.W.3d 285, 288–89 (Tex. Crim. App. 2006) (quoting *Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003)).

must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Price v. State*, 594 S.W.3d 674, 680 (Tex. App.—Texarkana 2019, no pet.) (quoting *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006)). "In any given case, 'these factors may well blend together in practice.'" *Id.* (quoting *Gigliobianco*, 210 S.W.3d at 642).

We find that the first factor favored admission of the evidence in light of its relevance to the issue of Laws's mens rea at the time of the offense, an element that the State was required to prove. Due to cross-examination that questioned whether Laws actually grabbed Byrdsong's gun, the trial court could have also found that the evidence spoke to the issue of Byrdsong's credibility. Because the recording and cross-examination of the officers explored the possibility that Laws acted purely out of fear for his life, we find that the trial court did not abuse its discretion in finding that the State had a heightened need for the evidence under the second factor. We also find that the evidence did not have a tendency to suggest a decision on an improper basis or to confuse or distract the jury from the main issues in the case because the issue of Laws's intent could be inferred from his statements and acts after the offense. In light of the recording and other testimony at trial showing that Laws was more than just vulgar toward the officers, and Byrdsong's testimony that Laws grabbed his gun, we do not find abuse of discretion in the trial court's determination that there was a very low tendency of the evidence to

13

be given undue weight.[7]  Finally, the evidence was presented through very brief questioning of Davis and did not consume an inordinate amount of time.  We find that the trial court did not abuse its discretion in conducting its Rule 403 balancing analysis.

Because we find no abuse of discretion in the trial court's evidentiary rulings, we overrule Laws's third point of error.

## V.      Laws Was Not Entitled to a Lesser-Included-Offense Instruction

In his fourth point of error, Laws believes that his own testimony entitled him to a lesser-included-offense instruction of resisting arrest.  Because we find that resisting arrest was not a rational alternative to assault of a peace officer in this case, we overrule Laws's fourth point.

### A.      Standard of Review

"We employ a two-step process in our review of alleged jury-charge error."  *Murrieta v. State*, 578 S.W.3d 552, 554 (Tex. App.—Texarkana 2019, no pet.) (citing *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994)).  "Initially, we determine whether error occurred and then evaluate whether sufficient harm resulted from the error to require reversal."  *Id.* (quoting *Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.—Texarkana 2012, no pet.) (citing *Abdnor*, 871 S.W.2d at 731–32)).[8]

---

[7]We also find that Laws's statement that he could have shot the officers, but did not do so, could have been interpreted in his favor and used to suggest that he did not have the intention of harming the officers.

[8]"[T]he jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby."  *Id.* (quoting TEX. CODE CRIM. PROC. ANN. art. 36.13).  "A trial court must submit a charge setting forth the 'law applicable to the case.'"  *Id.* (quoting *Lee v. State*, 415 S.W.3d 915, 917 (Tex. App.—Texarkana 2013, pet. ref'd) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.14)).  "The purpose of the jury charge . . . is to inform the jury of the applicable law and guide them in its application.  It is not the function of the charge merely to avoid misleading or confusing the jury:  it is the function of the charge to lead and prevent confusion."  *Id.* (quoting *Lee*, 415 S.W.3d at 917; *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007)).

14

### B.    Laws's Testimony

At trial, Laws tried to justify his actions by stating that he acted out of fear of harm from Byrdsong and Lemmon. Laws testified that, when Byrdsong drew the weapon, he thought to himself, "Oh, no, they're going to tackle me, they're going to do something to me." Laws said he started backing up when he saw Lemmon pointing a gun to his face because he was afraid for his life.

According to Laws, the officers were the only aggressors. Laws said that Byrdsong hit him in the face and that he did not retaliate. Laws testified, "I know better than to hit an officer. I would not hit an officer. I did not hit an officer nor strike at one." Laws also denied grabbing the officers' genitals and opined that Byrdsong sustained injuries to his arm because Laws was trying to block his punches.

Laws admitted that he was resisting arrest, did not follow orders to get on the ground, and tried to lock himself in his car to prevent his continued assault by the officers. Laws said he did not intend to hurt the officers and that he sprayed the mace because "[t]he only thing [he] could do was shoot a dispersion on them so they would disperse." Due to this testimony, Laws requested a lesser-included-offense instruction of resisting arrest.

### C.    Analysis

Laws argues that the trial court's refusal to submit the lesser-included-offense instruction constituted error. We disagree.

We employ a two-prong test to determine whether a defendant is entitled to a lesser-included-offense instruction. *Lofton v. State*, 45 S.W.3d 649, 651 (Tex. Crim. App. 2001). First,

"the lesser-included offense must be included within the proof necessary to establish the offense charged, and[, second,] some evidence must exist in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser[-]included offense." *Id.* (citing *Wesbrook v. State*, 29 S.W.3d 103, 113 (Tex. Crim. App. 2000); *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App. 1993)). The State does not contest that the first prong of the test was satisfied.

As for the second prong, "[t]he evidence must establish the lesser-included offense as a valid rational alternative to the charged offense." *Wesbrook v. State*, 29 S.W.3d 103, 113 (Tex. Crim. App. 2000). Here, the State submitted several counts for each offense including that Laws "did then and there intentionally, knowingly, or recklessly cause bodily injury" to both Lemmon and Byrdsong "by scuffling, fighting, grappling, struggling, forcefully resisting, tussling, or wrestling with" them. The evidence here, including Laws's admission that he maced the officers, showed that Laws committed the offense of assault of a peace officer. Laws also testified that he blocked Byrdsong's punches, and the jury watched the recording of the fight.

In *Lofton*, the Texas Court of Criminal Appeals found that where the State proved the greater offense of assaulting a police officer, evidence that the defendant only intended to prevent his arrest did not entitle him to a lesser-included-offense instruction because, "[e]ven if appellant had intended only to prevent his arrest, the force used by appellant against [the officer], at the very least, recklessly caused [the officer] to suffer a bodily injury." *Lofton*, 45 S.W.3d at 652. As a result, the Court found that "[r]egardless of appellant's intent, the State proved that appellant assaulted [the officer] . . . and "[r]esisting arrest was not a rational alternative to assault

16

on a public servant." *Id.* Following this rationale, we have also held that a defendant is not entitled to a lesser-included-offense instruction for resisting arrest where the evidence shows that the defendant "recklessly caused bodily injury in disregarding the substantial nonjustifiable risk that his struggling, flailing about, and kicking could result in bodily injury to [an officer] and that bodily injury in fact resulted." *Gumpert v. State*, 48 S.W.3d 450, 454 (Tex. App.—Texarkana 2001, pet. ref'd).

Therefore, Laws was not entitled to a lesser-included-offense instruction in this case because, notwithstanding his testimony that he did not intentionally hit or strike anyone, the force used by Laws, at a minimum, recklessly caused Lemmon and Byrdsong to suffer injury. *See Lofton*, 45 S.W.3d at 652; *Wesbrook*, 29 S.W.3d at 113–14; *Gumpert*, 48 S.W.3d at 454. As a result, resisting arrest was not a valid rational alternative to the charged offense, and the trial court did not err in denying its submission to the jury. We overrule Laws's fourth point of error.

## VI. Laws Failed to Preserve and Adequately Brief His Fifth Point of Error

"Alternate jurors . . . shall have the same functions, powers, facilities, security, and privileges as regular jurors." TEX. CODE CRIM. PROC. ANN. art. 33.011. "An alternate juror who does not replace a regular juror shall be discharged after the jury has rendered a verdict on the guilt or innocence of the defendant and, if applicable, the amount of punishment." *Id.*

Laws admits that "allowing the alternate jurors to be present in the jury room during deliberations d[oes] not violate the constitutional prohibition against deliberation by more than twelve jurors." *Castillo v. State*, 319 S.W.3d 966, 970 (Tex. App.—Austin 2010, pet ref'd) (citing *Trinidad v. State*, 312 S.W.3d 23, 28 (Tex. Crim. App. 2010) ("That the alternate jurors

17

were present in the jury rooms during deliberations, and may even have participated in all but the voting, does not mean that the jury was 'composed' of more than twelve members for purposes of Article V, Section 13.")). Instead, Laws argues on appeal that the practice violated Article 36.22, which reads, "No person shall be permitted to be with a jury while it is deliberating. No person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court." TEX. CODE CRIM. PROC. ANN. art. 36.22. This statutory error is subject to forfeiture and must be properly preserved by a contemporaneous objection. *Trinidad*, 312 S.W.3d at 29.

"It is well established that, in order to preserve an issue for appeal, a timely objection must be made that states the specific ground of objection, if the specific ground was not apparent from the context." *Buchanan v. State*, 207 S.W.3d 772, 775 (Tex. Crim. App. 2006). "A general or imprecise objection may be sufficient to preserve error for appeal, but only if the legal basis for the objection is *obvious* to the court and to opposing counsel." *Id.* "When the objection is not specific, and the legal basis is *not* obvious, it does not serve the purpose of the contemporaneous-objection rule for an appellate court to reach the merits of a forfeitable issue that is essentially raised for the first time on appeal." *Id.*

Laws objected to allowing the alternate juror to remain in the jury room during deliberation by the following objection at trial:

> On page 9, the next-to-the-last statement where it's allowing a juror, the alternate juror, to remain in the jury room.
>
> . . . .

18

. . . . Now I know there's -- and you're instructing him not to speak, but, I mean, I think there's just too much of a risk and the danger for them to bring input. We can't police that. We just have to trust that. I think out of an abundance of caution I think we need to do like we always do and ask them to maybe go downstairs and wait in the room. And I don't think it's really wasting that much time if -- I don't anticipate something happening to a juror; but if it does, I don't think it's going to take long for him to catch up. But I just think the danger of possible abuse of that is just too -- it's too high, Judge, and I am going to object to that.

Laws did not argue that allowing the alternate juror to remain in the jury room during deliberation constituted a statutory violation of Article 36.22. As a result, we conclude that Laws's objection did not meet the specificity requirement of Rule 33.1(a)(1) of the Texas Rules of Appellate Procedure. *See Castillo*, 319 S.W.3d at 970.

Also, Rule 38.1(h) of the Texas Rules of Appellate Procedure requires that a brief contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). Laws's brief did not address the issue of how he was harmed by the alternate juror's presence in the deliberation room, especially in light of the trial court's inclusion of the following instruction in the jury charges on guilt/innocence and punishment:

Juror Number 50, you are an alternate juror. As an alternate juror, you are to sit inside the jury room while your fellow jurors deliberate. You are not to participate in the deliberations, discussion nor are you to vote on the verdict. You are to sit silent in observation of your fellow jurors.

Please disregard any comment, statement or opinion by the alternate juror. They shall not be used in your deliberations.

We conclude that Laws also inadequately briefed the issue of harm. *See Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000) (holding issue inadequately briefed where "appellant

19

d[id] not address the question of whether the alleged error . . . was harmless"); *Wilson v. State*, 473 S.W.3d 889, 901 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (citing *Sierra v. State*, 157 S.W.3d 52, 64 (Tex. App.—Fort Worth 2004), *aff'd*, 218 S.W.3d 85 (Tex. Crim. App. 2007)).

Because Laws failed to preserve his fifth point of error, we overrule it.

## VII.    Laws Failed to Preserve His Last Point of Error

In his last point of error, Laws argues that his sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment because it is excessive and grossly disproportionate to his crime. The State argues that Laws failed to preserve this complaint at trial. We agree.

"To preserve for appellate review a complaint that a sentence is grossly disproportionate, constituting cruel and unusual punishment, a defendant must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired." *Navarro v. State*, 588 S.W.3d 689, 690 (Tex. App.—Texarkana 2019, no pet.) (quoting *Russell v. State*, 341 S.W.3d 526, 527 (Tex. App.—Fort Worth 2011, no pet.)); *see* TEX. R. APP. P. 33.1; *Stewart v. LaGrand*, 526 U.S. 115, 119 (1999); *Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996); *Curry v. State*, 910 S.W.2d 490, 497 (Tex. Crim. App. 1995); *Duren v. State*, 87 S.W.3d 719, 732 (Tex. App.—Texarkana 2002, pet. struck). Further, the trial court must have "ruled on the request, objection, or motion, either expressly or implicitly," or the complaining party must have objected to the trial court's refusal to rule. TEX. R. APP. P. 33.1(a)(2).

Laws did not object to his sentence at trial, but he e-filed a motion for new trial stating that "the verdict [was] excessive in view of the evidence and the offense charged." However, Laws did not request a hearing on his motion. "A defendant is required to 'present' a motion to the trial court within ten days of filing it, unless the court, in its discretion, extends that time period." *Navarro v. State*, 588 S.W.3d 689, 690–91 (Tex. App.—Texarkana 2019, no pet.) (citing TEX. R. APP. P. 21.6; *Stokes v. State*, 277 S.W.3d 20, 21 (Tex. Crim. App. 2009)).[9] Because it is well-established that "the filing of a motion for new trial alone is not sufficient to show 'presentment,'" it "does not preserve an issue for appellate review in the absence of a showing that the trial court has seen the motion." *Id.* at 691 (quoting *Carranza v. State*, 960 S.W.2d 76, 78 (Tex. Crim. App. 1998) (citing *Colone v. State*, 573 S.W.3d 249, 259 (Tex. Crim. App. 2019) ("[T]he mere filing of a 'certificate of presentment' will not suffice to establish that a motion for new trial and request for a hearing has been presented to the trial court."); *Lopez v. State*, 96 S.W.3d 406, 414 (Tex. App.—Austin 2002, pet. ref'd) ("[T]he mere filing of a motion for a new trial . . . will not preserve the error."))). "The purpose of the presentment rule is 'to put the trial court on actual notice that a defendant desires the trial court to take some action on the motion for new trial such as a ruling or a hearing on it.'" *Id.* (quoting *Stokes*, 277 S.W.3d at 21 (quoting *Carranza*, 960 S.W.2d at 78)).

In this case, nothing in the appellate record shows that Laws's motion for new trial was timely presented to the trial court. "The motion was not hand-delivered to the trial court, there is

---

[9]*See Weeks v. State*, No. 06-12-00110-CR, 2013 WL 557015, at *2 (Tex. App.—Texarkana Feb. 14, 2013, no pet.) (mem. op., not designated for publication). Although this unpublished case has no precedential value, we may take guidance from it "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

no notation on the motion indicating that the trial court had seen it, and there is no docket entry showing that the motion was brought to the trial court's attention." *Id.* As a result, we find Laws's point of error unpreserved.

"A reviewing court should not address the merits of an issue that has not been preserved for appeal." *Id.* (quoting *Sandoval v. State*, 409 S.W.3d 259, 287 (Tex. App.—Austin 2013, no pet.) (quoting *Wilson v. State*, 311 S.W.3d 452, 473–74 (Tex. Crim. App. 2010) (per curiam) (op. on reh'g))). Accordingly, we overrule Laws's last point of error.

## VIII. Conclusion

We affirm the trial court's judgment.


                                        Scott Stevens
                                        Justice



                        DISSENTING OPINION

I believe that Laws adequately briefed a harm analysis on his fifth point of error. I also believe that the trial erred in permitting the alternate juror to be present with the jury during deliberations in violation of Article 36.22. Finally, I believe that the trial court's error was harmful and that the trial court's judgment should be reversed and the case remanded to the trial court for a new trial. Accordingly, I respectfully dissent.

## I.      Laws Adequately Briefed His Fifth Point of Error

The majority holds that Laws waived his fifth point of error because he failed to adequately brief the question of harm.  Admittedly, Laws did not cite any authority or offer a detailed analysis of the question.  Laws' entire argument regarding harm is contained in the following portion of one paragraph in his brief:

> It is odd the court would require a harm analysis at this point.  Appellant's trial counsel could have no way of knowing what harm may come from such a violation.  It was clear to Appellant what could happen when he stated, "I just think the danger of possible abuse of that is just too high."  The danger is too high, that is why the Code specifically forbids it. In the other cases cited the objection came after the violation had already occurred or not at all, and so an opportunity to show harm is reasonable.  Here, when the trial counsel does everything right, and objects prior to the violation he cannot be meant to show harm as it is assumed -- "No person shall be permitted to be with a jury while it is deliberating."  Code of Crim. Proc., art. 36.22.  Because of this error Appellant is entitled to a new trial.

Nevertheless, in deciding whether an appellant forfeited his appellate complaint to a trial court's evidentiary ruling, we have previously held, "A party's failure to employ 'magic words' will not preclude error preservation if the party's complaint is sufficient to make the trial court aware of the grounds of the complaint."  *Duke v. State*, 365 S.W.3d 722, 725 (Tex. App.—Texarkana 2012, no pet.).  Moreover, in *Duke*, we also held, "When Article 36.22 is violated, a rebuttable presumption of injury to the defendant arises."  *Id*. at 727 (citing *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009)).  Because a rebuttable presumption of harm exists when a trial court violates Article 36.22, Laws would not have to show harm; rather, the State would have to show that it rebutted the presumption of harm.  It is clear that Laws argues in his brief that he does not need to show harm to prevail on this point of error.    Therefore,

23

notwithstanding the fact that Laws failed to say "the magic words" by specifically citing to *Duke*, I believe that Laws sufficiently briefed the question for appeal.[10]

## II. The Trial Court Erred in Permitting the Alternate Juror to be Present with the Jury During Deliberations in Violation of Article 36.22 of the Texas Code of Criminal Procedure

Article 36.22 contains two prohibitions: (1) "[n]o person shall be permitted to be with a jury while it is deliberating" and (2) "[n]o person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court." TEX. CODE CRIM. PROC. ANN. art. 36.22. These two prohibitions serve different purposes. The second prohibition seeks to prevent the jury from receiving information from any source other than the witnesses and evidence at trial. The first prohibition seeks to prevent the jury from being influenced by the watchful eyes of others while it is deliberating. Unlike trials, which must be held in open court, jury deliberations are held in secret.[11] By prohibiting the presence of others in the jury room during deliberations, Article 36.22's first prohibition seeks to preserve the ability of juries to thoroughly examine the evidence in secret, free from outside influences.[12] The trial court's order permitting the alternate juror to be present with the jury during its deliberations violated the first prohibition of Article 36.22.

---

[10]Likewise, although Laws did not cite to *Marin v. State*, 851 S.W.2d 275 (Tex. Crim. App. 1993), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262 (Tex. Crim. App. 1997), or its progeny, those cases discuss the concept of fundamental error whereby a defendant does not need to establish harm to prevail on appeal.

[11]Thus, jury deliberations are held in secret, the jury verdict must be general, and the jury makes no written findings other than those expressly provided for by law. *See Lampkin v. State*, 470 S.W.3d 876, 917 (Tex. App.—Texarkana 2015, pet. ref'd); see also TEX. CODE CRIM. PROC. ANN. arts. 36.215, 37.07, § 1(a) (Supp.), art. 42.01.

[12]To use an unlikely example to make a point, one can easily see that a jury would not feel free to discuss weaknesses in the State's evidence if the victim were in the jury room with them during deliberations.

The State argues that the trial court did not err because "alternate jurors are members of the jury and thus are not prohibited by Article 36.22 from being in the room during deliberations." It goes on to state that "this interpretation is consistent with the plain language of Article 33.011(a) of the Texas Code of Criminal Procedure . . . as that statute states that 'In district courts, the judge may direct that not more than four <u>jurors</u> in addition to the regular jury be called and impaneled." Nevertheless, the State's interpretation contradicts the plain language of Article 33.011.

To begin with, the language in subsection (a) relied on by the State itself distinguishes between the "four jurors" and "the regular jury." TEX. CODE CRIM. PROC. ANN. art. 33.011(a). Likewise, Article 33.011(b) specifically distinguishes between "alternate jurors," "jurors," and "the jury." TEX. CODE CRIM. PROC. ANN. art. 33.011(b) ("*Alternate jurors* in the order in which they are called shall replace *jurors*, who prior to the time *the jury* renders a verdict . . . become or are found to be unable or disqualified to perform their duties . . . or [for] . . . good cause . . . .") (Emphasis added). And more significantly, the 2007 amendments to Article 33.011(b) retained the distinction between "alternate juror[s]" "regular juror[s]," and "the jury" that already existed. *Id*. ("An *alternate juror* who does not replace a *regular juror* shall be discharged after *the jury* has rendered a verdict . . . .") (Emphasis added). Therefore, under Article 33.011's plain language, "alternate jurors" are distinguished from "regular jurors" or "the jury."[13]

Moreover, to conclude that the 2007 amendments to Article 33.011(b) made "alternate jurors" part of "the jury" for purposes of Article 36.22, we would have to conclude that the

---

[13]*See also* TEX. CODE CRIM. PROC. ANN. art. 36.29(d) (Supp.) ("After *the jury* has rendered a verdict . . . the court shall discharge an *alternate juror* who has not replaced a *juror*.") (Emphasis added).

25

Legislature—even though it retained the existing distinction between "alternate jurors," "jurors," and "the jury" in the 2007 amendments to Article 33.011(b), and even though it did not change the language of Article 36.22 at all—nevertheless intended for the term "the jury" in Article 36.22's first prohibition to include alternate jurors as defined in Article 33.011(b). This would essentially re-write Article 36.22's first prohibition so that "no person shall be permitted to be with a jury while it is deliberating" becomes "no person shall be permitted to be with a jury while it is deliberating. *The term jury as used in this section shall include alternate jurors under Article 33.011(b).*" TEX. CODE CRIM. PROC. ANN. art. 36.22. We cannot add language to a statute via statutory construction. *See Seals v. State*, 187 S.W.3d 417, 420 (Tex. Crim. App. 2005) ("Where the statute is clear and unambiguous, the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute.") (citing *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991)). Therefore, absent a clear manifestation of Legislative intent, we cannot interpret the 2007 amendments to Article 33.011(b) as amending Article 36.22.

Likewise, nothing in the language of the 2007 amendments indicates that the Legislature intended to repeal Article 36.22's first prohibition. *See Diruzzo v. State*, 581 S.W.3d 788, 799 (Tex. Crim. App. 2019) (holding that "the presumption against implied repeals recognizes that, 'if statutes are to be repealed, they should be repealed with some specificity'" and that "[s]o long as the original provision is susceptible to a construction that is in harmony with the amendment, so as to avoid implied repeal of some part of the original, salvage rather than subtraction should be the preferred judicial response, since 'it is no more the court's function to revise [a legislative

enactment] by subtraction than by addition'"); *see also* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS, at 185 (2012). Accordingly, it is clear that the Legislature only intended the 2007 amendments to Article 33.011(b) to postpone the time in which the trial court may discharge the alternate jurors, not to amend or repeal Article 36.22's prohibition against allowing persons "to be with a jury while it is deliberating." TEX. CODE CRIM. PROC. ANN. art. 36.22. Accordingly, the trial court erred in permitting the alternate juror to remain with the jury during its deliberations.

## III.    The Trial Court's Error Was Harmful

The primary question in this case is whether the trial court's error was harmful. Because we held in *Duke* that a violation of Article 36.22 creates a rebuttable presumption of harm, it was the State's burden to rebut that presumption by showing the absence of harm. *Duke*, 365 S.W.3d at 727. Although the State has not affirmatively argued that it rebutted the harm, we can look to the record to make that determination. As we held in *Duke*, "[w]hen determining whether the State sufficiently rebutted the presumption of harm, we view the evidence in the light most favorable to the trial court's ruling and defer to the trial court's resolution of historical facts and its determinations concerning credibility and demeanor." *Id*. (citing *Ocon*, 284 S.W.3d at 884).

As we noted, there are two prohibitions in Article 36.22. Therefore, there are two ways to violate that statute. Not surprisingly, then, there are two types of cases addressing whether the State rebutted the presumption of harm. First, there are cases where the second prohibition in Article 36.22 has been violated. *Ocon* is such a case. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009).

27

In *Ocon*, during appellant's trial on charges of aggravated sexual assault of a child, his defense attorney overhead a juror telling someone named Brenda on his telephone, "I don't know why the hell they picked me. I would rather be on a double ax murderer then [sic] this damn case. It's dirty, disgusting. No, unless we convict the bastard today, then I'm kind of stuck here." *Id*. at 883. The Court of Criminal Appeals held, "A violation of Article 36.22, once proven by the defendant, triggers a rebuttable presumption of injury to the accused, and a mistrial may be warranted." *Id*. at 884. Nevertheless, the court did not address whether the State had rebutted the presumption of harm because it concluded that the defendant had not shown a violation of that statute in the first place: "Most significantly, Appellant presented no evidence that the juror received information as a result of the phone conversation." *Id*. at 887. Thus, "[t]here is no indication that the juror on the phone and the other juror present during the conversation left the men's restroom with any new information about the case from Brenda." *Id*. However, it can be argued that, based on *Ocon*, the State can rebut the presumption of harm attendant to a violation of Article 36.22's second prohibition by proving that the jury did not receive any information regarding the case from the external source.

The other type of case involves a violation of Article 36.22's first prohibition. *Duke* is of that type. In *Duke*, "[a]t the conclusion of the punishment phase, the alternate juror . . . accompanied the jury into its deliberation session on punishment and remained in the jury room for approximately five minutes." *Duke*, 365 S.W.3d at 727. After receiving testimony from the alternate juror and the jury foreperson that the alternate juror "did not participate in any discussions or in any votes while she was present in the jury room for '[j]ust a couple of

28

minutes[,]' [t]he trial court denied Duke's motion for a mistrial." *Id*. On this record, we held that "[t]he record contains ample support for the trial court's conclusion that the State met its burden in rebutting the presumption of injury." *Id*.[14]

Accordingly, in *Duke*, we held that the State rebutted the presumption of harm caused by the trial court's violation of Article 36.22's first prohibition because there was ample evidence that the alternate juror "did not participate in any discussion while in the jury room." *Id*. Yet, our holding in *Duke* must be read in context of the facts in that case, namely, that the alternate juror was removed from the presence of the jury within five minutes after the jury was sent to the jury room to begin deliberating. By sequestering the alternate juror from the jury—albeit tardily —the trial court complied with the first prohibition of Article 36.22. The only question remaining was whether the juror had influenced the jury before she was removed. Because the alternate "testified that [she] did not participate in any discussion while in the room" and because "[t]he jury foreperson . . . testified that [the alternate] did not participate in any discussions or in any votes while she was present in the jury room for '[j]ust a couple of minutes,'" we held that no harm had occurred. *Id*. While we focused on the absence of participation, the key was that the alternate did not influence the jury by her presence in the jury room for "[j]ust a couple of minutes." *Id*.

---

[14]A fact situation similar to *Duke* was presented in *Klapesky v. State*, 256 S.W.3d 442 (Tex. App.—Austin 2008, pet. ref'd), where the Austin Court of Appeals held that the defendant never established any violation of Article 36.22 because he never established that the alternate juror communicated anything to the other jurors in the case. *Id*. In addition, the fact situation presented in this case was presented to the Court of Criminal Appeals in *Trinidad v. State*. *Trinidad v. State*, 312 S.W.3d 23 (Tex. Crim. App. 2010). However, the court held that the error had not been preserved in that case because "[t]he appellants had every opportunity to object that the trial court's attempts to comply with the recent amendment to Article 33.011(b) of the Code of Criminal Procedure, would run afoul of Article 36.22, but they did not do so." *Id*. at 29. Thus, the Court of Criminal Appeals did not resolve this issue because the appellants "procedurally defaulted their statutory arguments on appeal." *Id*.

In this case, however, the trial court permitted the alternate juror to remain with the jury during the entire deliberations. Merely establishing that the alternate juror did not participate in deliberations where the alternate juror remains with the jury during the entire deliberations does not establish a lack of influence on the jury's deliberations in the way that a lack of communication by the alternate juror in the "couple of minutes" before the alternate juror was removed from the jury and sequestered for the remainder of the deliberations does. *Id.* It would stretch our holding in *Duke* to say that the alternate juror can remain with the jury throughout the entire deliberations and no harm could be shown so long as they do "not participate in any discussion while in the jury room." *Id.* Such reasoning confuses Articles 36.22's first prohibition with its second prohibition and eviscerates the first sentence of Article 36.22. As noted above, it is not simply the alternate's participation in the deliberations with the jury that is the problem addressed by Article 36.22's first prohibition; rather, it is the potential for influence on the jury deliberations caused by the alternate juror's presence "with a jury while it is deliberating" that is the problem. Accordingly, in *Duke*, it was not the fact that the alternate juror did not participate in the deliberations in the five minutes in which she was present with the jury, *by itself*, that established the lack of harm resulting from the trial court's error; rather, it was the combination of the fact that the trial court removed the alternate juror five minutes after the jury left the courtroom with the fact the alternate juror did not participate in any deliberations during that five-minute period that established the lack of harm.

The distinction between the first and second prohibitions of Article 36.22 becomes manifest in this case. Here, the trial court permitted the alternate juror to remain with the jury

30

during the entirety of the deliberations but instructed the alternate not to vote or have any part in the deliberations. We presume that the alternate juror followed the trial court's instruction and did not say anything about the case during the jury's deliberations. But what about non-verbal communication? Could the alternate have influenced a juror's position by sighing, rolling his eyes, shaking his head, or simply—as judges and parents are adept at doing—giving someone "the look"? I know of one trial judge—many years ago—who had to reposition the court reporter's table so that her back was to the jury because she rolled her eyes and made facial gestures every time a defendant or his attorney said anything. An alternate could do the same thing and never say a word. Thus, as the Legislature recognized in drafting Article 36.22, two prohibitions are necessary: no one may communicate with the jury during the trial and no one may be present with the jury during deliberations. Both of these prohibitions are necessary, and we may not repeal the first one through statutory interpretation.

Moreover, merely relying on the presumption that the alternate juror followed the trial court's instruction not to participate in deliberations cannot rebut the presumption that the alternate juror's presence with the jury during deliberations harmed the appellant. To do so would reverse the presumption of harm recognized in *Ocon* and applied in *Duke*. In *Duke*, there was evidence that the trial court attempted to comply with Article 36.22 and took steps to remedy its accidental violation of the statute. The harm analysis in *Duke* assumed that the trial court attempted to comply with Article 36.22 in the first place, and the question was whether the presumed harm was rebutted by evidence that the alternate juror said nothing during the two to five minutes she was present with the jury.

31

Here, the trial court simply overruled Appellant's objection and sent the alternate juror into the jury room with the jury during the entire deliberation. Thus, to argue that the State rebutted the presumption of harm because we presume the alternate juror followed the trial court's instruction not to participate in the deliberations reverses the presumption of harm to a presumption of harmlessness. In that scenario, there would be a presumption that the alternate did not participate as instructed, and the burden would shift to the defendant—in order to establish harm—to show that the alternate juror disobeyed the trial court's instruction. This reasoning turns Article 36.22's first prohibition on its head. Instead of "[n]o person shall be permitted to be with a jury while it is deliberating," the statute would read, "persons may be with the jury during deliberation so long as they do not influence the jury." TEX. CODE CRIM. PROC. ANN. art. 36.22.

Consequently, at a minimum, there must be, as the Court of Criminal Appeals held in *Ocon*, a rebuttable presumption that a violation of Article 36.22 is harmful, and the burden is on the State to demonstrate that there was no harm. Merely pointing to a presumption that the alternate juror followed the trial court's instruction not to participate in the deliberations is insufficient to meet that burden. Rather, the State must affirmatively prove that the jury was not influenced by the alternate juror's presence. Otherwise, the first sentence of Article 36.22 becomes meaningless.

Finally, the State offers judicial economy justifications for its interpretation, and the concurring opinion in *Trinidad* noted the problem attendant to keeping an alternate sequestered

from the jury during deliberations.[15]  We are admonished to interpret unambiguous statutes according to their plain language, not based on policy considerations.  Nevertheless, even if we could consider those policy considerations, the State's judicial economy argument appears to be a solution in search of a problem.  The inefficiency the State seeks to eliminate is the time it would take for a jury to start over with deliberations whenever an alternate juror replaces a regular juror after the deliberations have begun.  Yet, this type of harm can only occur in that limited window between the time the jury begins deliberating and the time it reaches a verdict.

But how often does that happen?  Most of the felony criminal jury trials we see on appeal last two or three days, and the jury deliberations last half a day or less.  In fact, the case before us lasted two days.  The opening statements and the State's case-in-chief during the guilt phase began on October 22, 2019, and both parties rested and closed on that day.  On October 23, 2019, which was the day of final argument and deliberation, the trial court began the morning with the charge conference and gave each attorney thirty minutes to make their final arguments. After arguments were completed, the trial court discharged the jury to begin deliberations.  The jury reached its verdict sufficiently soon thereafter for the trial court to recess for an early lunch and schedule the punishment phase to begin at 12:15 p.m. that afternoon.

The punishment phase began after lunch.  During that phase of trial, both parties made opening statements, the State presented thirteen witnesses, the court read the charge on

---

[15]Justice Johnson noted in his concurring opinion in *Trinidad*,

> The trial judge in this case apparently considered judicial economy and decided to have the alternate juror retire with the "real" jurors; if a juror became disabled after deliberations began and the alternate juror was not privy to the discussions up that that point, the jury would have to begin again so as to acquaint the alternate juror with the current status of discussions.  The later in deliberations that the disability of a juror occurred, the longer the catching-up would take.

*Trinidad*, 312 S.W.3d at 30 (Johnson, J., concurring).

punishment, and both sides made closing arguments. The jury began deliberating and reached a verdict that same day. Thus, in this case, the entire jury deliberation during the guilt phase took less than one-half of one day, and the entire punishment phase and deliberations took the remainder of the day. Therefore, the risk of restarting deliberations after advancing an alternate juror to the jury is minimal, at best. It hardly justifies repealing a statutory prohibition by statutory interpretation.

## IV.    Conclusion

In short, Article 36.22's first prohibition is clear and unambiguous: "No person shall be permitted to be with a jury while it is deliberating." TEX. CODE CRIM. PROC. ANN. art. 36.22. I believe that the trial court erred in permitting the alternate juror to be present with the jury during its deliberations in this case. I also believe that that error was harmful to Appellant and that the State failed to establish that it was not. Consequently, I respectfully dissent. I believe we should reverse the trial court's conviction and sentence and remand the case to the trial court for a new trial.


Ralph K. Burgess
Justice


Date Submitted:     July 6, 2020
Date Decided:       October 14, 2020

Publish